**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| JAMES R. LUCAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 22-2107-KHV |
| DADSON MANUFACTURING CORP., ) | |
| et. al, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

James R. Lucas filed suit against Dadson Manufacturing Corporation ("Dadson") and Peter B. Lucas, alleging breach of contract and fraud. This matter is before the Court on Defendants' Motion For Summary Judgment (Doc. #31) filed November 1, 2022. For reasons stated below, the Court sustains defendants' motion.

**Legal Standard**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010). Once the moving party meets the initial burden, the burden

shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which he carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  To carry his burden, the nonmoving party may not rest on his pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250–51.  In response to a motion for summary judgment, a party cannot rely on ignorance of facts, speculation or suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Liberty Lobby, 477 U.S. at 251–52.

## Factual Background

From 2006 to 2017, plaintiff served as Dadson's Chief Executive Officer ("CEO") and Chairman of the Board ("COB").  Peter Lucas, plaintiff's son, was the Chief Operating Officer ("COO").  Dadson terminated plaintiff's employment in 2017 and promoted Peter Lucas to President.

### Johnson County Proceeding

While serving as CEO and COB, plaintiff took deferred salary for approximately three years and eight months.  During that time, he also made loans to Dadson from his personal account.

In December of 2018, to recover his deferred salary and loans, plaintiff sued Dadson, Nancy F. Peterson (plaintiff's former mother-in-law, who owned 100% of Dadson's stock), the Nancy F. Peterson Trust and Pamela Lucas (plaintiff's ex-wife) in Johnson County District Court ("Johnson County Proceeding").  During the trial, Peter Lucas testified that Dadson had overpaid plaintiff for his personal loans and that plaintiff had been stealing from Dadson.  The jury awarded plaintiff $278,066.05 in deferred salary but awarded Dadson $117,328.64 for conversion of overpaid loans and $400,000 for plaintiff's breach of fiduciary duty.  It also determined that Dadson was entitled to punitive damages.

On March 12, 2019, plaintiff, Dadson and other listed parties reached a settlement agreement by mutual releases ("Settlement Agreement").[1]  The Settlement Agreement foreclosed Dadson's ability to seek punitive damages or initiate further action against plaintiff.  Exhibit H (Doc. #32-8) at 3–5.  In return, plaintiff "waive[d] his claims against Dadson . . . [and] Peter Lucas."  Id. at 4.

In addition, the Settlement Agreement resolved issues in a pending divorce between plaintiff and Pamela Lucas.  Id.  Specifically, the parties agreed that "each party will accept the debts that they have incurred and holding the other party harmless in the event that the debt is not paid."  Id.

On May 8, 2019, the Johnson County District Court denied plaintiff's motions to set aside the Settlement Agreement and for a new trial.[2]  Instead, the court granted defendants' motion to

---

[1]  On July 11, 2019, the parties signed a written agreement whereby they stipulated that the transcript from the Johnson County Proceeding which detailed the agreement to the district court would serve as the Settlement Agreement for the case.  Exhibit K (Doc. #32-11).

[2]  Apparently, shortly after the verdict, plaintiff received evidence from a US Bank employee that Peter Lucas had been the one stealing Dadson funds.  Plaintiff moved for a new trial based on newly discovered evidence, which the Johnson County court denied.

3

enforce the Settlement Agreement.  On June 12, 2019, the court granted defendants' second motion for enforcement of the Settlement Agreement and mandated its execution.

Divorce Proceeding

In August of 2019, the Johnson County District Court considered proposed division of marital assets by plaintiff and his ex-wife.  Because plaintiff and Pamela Lucas resolved financial issues in the Settlement Agreement, the court only considered whether their characterization of marital assets was fair, just and equitable under that agreement.

Pamela Lucas characterized her attorney fees from the Johnson County Proceeding as a dissipation of assets, and the court accepted this characterization.  Exhibit L (Doc. #32-12) at 15. The court then entered the divorce decree, and plaintiff appealed.  On appeal, plaintiff argued that awarding Pamela Lucas attorney fees from the Johnson County Proceeding was not fair and equitable under the Settlement Agreement, which stated that the parties would "accept the debts that they [had] incurred" in the Johnson County Proceeding.  Exhibit H (Doc. #32-8) at 3–5. Plaintiff put forth eight arguments on this issue in his brief.[3]

On November 21, 2019, the Kansas Court of Appeals affirmed the district court's division of property.  The Kansas Court of Appeals stated as follows:

[Plaintiff] contends the district court arbitrarily declared Pamela's legal fees in the Dadson case a dissipation of marital assets in this case.  He contends that because

---

[3]     Specifically, in his brief on appeal, plaintiff argued that the district court erred because (1) its opinion included contradictory statements about the Settlement Agreement; (2) Pamela Lucas's fees were not a dissipation of assets because she was a necessary party in the Johnson County Proceeding; (3) plaintiff named Pamela Lucas in the Johnson County Proceeding pursuant to his counsel's advice; (4) Pamela Lucas could have avoided accruing high fees; (5) characterizing Pamela Lucas's fees as a "foolish expenditure of funds" was extreme; (6) the district court had violated and voided the Settlement Agreement—even though it was clearly not a party to such agreement; (7) the district court could not award Pamela Lucas attorney fees from a separate business suit in a divorce proceeding; and (8) the district court disregarded the evidence of plaintiff's attempts to resolve the Johnson County Proceeding outside of court.  As noted above, the Kansas Court of Appeals rejected each of these arguments.

> the settlement agreement was a complete walk-away agreement, the district court could not consider Pamela's debts in determining whether the settlement agreement was just and equitable.
>
> The court categorized Pamela's legal fees as a dissipation of marital assets because [plaintiff's] claims against Pamela in the Dadson case lacked merit and her inclusion in the lawsuit offered no benefit to [plaintiff] while creating significant debt for Pamela. In deciding the just and equitable division of marital property, a court can consider the dissipation of marital assets. K.S.A. 2020 Supp. 23-2802(c). "Dissipate" means to destroy, waste, or expend funds foolishly. The district court has wide discretion to consider whether marital assets were lost because of the wrongful conduct of one of the parties to the marriage. In re Marriage of Rodriguez, 266 Kan. 347, 352, 969 P.2d 880 (1998).
>
> The court was not assessing those fees here. The task of the district court was to add up the assets and debts each party would be left with after the walk-away settlement. The court had to determine whether that settlement was fair. Pamela would be left with about $50,000 in legal fees defending the claims [plaintiff] had made against her in the Dadson case. The court did not order [plaintiff] to pay Pamela that amount. The court considered that amount in determining if the settlement was fair. [Plaintiff] even admits that the $50,000 in legal fees was "a foolish and unnecessary expenditure of marital funds" even though he brought her into that lawsuit.
>
> [Plaintiff] has not offered us any legal arguments that show this was an error by the court.

Matter of Marriage of Lucas, No. 122204, 2021 WL 1045186, at *7–8 (Kan. Ct. App. March 19, 2021), review denied (Mar. 18, 2022). On March 18, 2022, the Kansas Supreme Court denied review.

Plaintiff's Additional Legal Actions

On July 11, 2019, in Jackson County, Missouri, plaintiff filed suit against Dadson and Peterson for employment fraud and other claims. The court dismissed the case based on res judicata and collateral estoppel. On September 30, 2020, the Missouri Court of Appeals affirmed.

On December 2, 2019, in Johnson County, Kansas, plaintiff filed suit against Peter Lucas for claims of theft from two other companies. On April 14, 2022, the district court granted summary judgment for Peter Lucas and concluded that the Settlement Agreement barred plaintiff's

5

claims.  Exhibit N (Doc. #32-15) at 5–6.

On May 7, 2020, plaintiff launched a complaint against the Honorable Paul Gurney, who presided over the Johnson County Proceeding and the divorce proceeding.  The Kansas Commission on Judicial Conduct dismissed the complaint.

On October 13, 2020, in United States District Court for the District of Kansas, plaintiff filed suit against Dadson, Peter Lucas and Pamela Lucas for breach of contract and fraud.  On July 7, 2021, the Honorable Eric F. Melgren dismissed plaintiff's claims, finding that the court lacked jurisdiction.  On March 9, 2022, the Tenth Circuit affirmed.

Procedural History

On March 18, 2022, plaintiff filed this action.  Plaintiff alleges breach of contract and fraud and seeks the following relief: (1) payment for his deferred salary plus interest, (2) repayment of personal loans to Dadson plus interest, (3) based on Peter Lucas's testimony at the Johnson County Proceeding, "review anew" of the false charges of conversion and breach of fiduciary duty and (4) punitive damages.  Amended Petition For Payment Of Deferred Salary Owed, Repayment Of Personal Loans Made, And Review Anew By The Court Of The Defendants' False Charges Against The Plaintiff (Doc. #14) filed April 15, 2022.  Defendants seek summary judgment on all claims.

## Analysis

Defendants argue that they are entitled to summary judgment on plaintiff's claims because he released such claims in the Settlement Agreement.[4]  Plaintiff responds that (1) the Settlement Agreement does not apply here and (2) even if it does, because the state court "awarded" Pamela

---

[4] Defendants further argue that res judicata and the statute of limitations bar plaintiff's claims.  The Court need not address these arguments because it sustains summary judgment on the basis of waiver and release by settlement.

6

Lucas attorney fees, the Settlement Agreement is void. Defendants respond that the plain language of the Settlement Agreement includes plaintiff's release of his claims and that because the state court already determined that its award of fees was fair and equitable under the Settlement Agreement, collateral estoppel principles preclude plaintiff from relitigating the issue in this action.

**I.      Scope Of The Settlement Agreement**

Defendants argue that in the Settlement Agreement, plaintiff released his claims against them. Plaintiff first responds that defendants' "'go-to' argument that a settlement agreement from two earlier state cases somehow covers more than those two cases . . . is entirely indefensible and *prima facie* unsupportable. This means that the settlement agreement is consequently inapplicable to the instant case, whether or not it was breached." Plaintiff's Response To The Court's Order To Show Cause Concerning Defendants' Argument For Application Of Collateral Estoppel, And Plaintiff's Refutation Thereof (Doc. #45) filed February 9, 2023 at 2. Plaintiff has not put forth any legal argument or authority that the Settlement Agreement is inapplicable here. Even so, the Court has carefully reviewed the applicable legal standards and the record in this case. See Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002) (party's failure to file response to summary judgment motion not sufficient basis on which to enter judgment).

Under Kansas law, a written settlement agreement is a contract and is subject to the same rules of construction that govern any other written contract. Cent. Kan. Credit Union v. Mut. Guaranty Corp., 886 F. Supp. 1529, 1537 (D. Kan. 1995). The overriding goal in the construction of a contract under Kansas law is to effectuate the intent and purpose of the parties. Id. (citing Heyen v. Hartnett, 235 Kan. 117, 122, 679 P.2d 1152, 1156 (1984)). A written contract which is free from ambiguity may be construed as a matter of law, id. (citing Wood River Pipeline Co. v.

7

Willbros Energy Servs. Co., 241 Kan. 580, 582, 738 P.2d 866, 869 (1987)), and where a settlement agreement is unambiguous, the Court's inquiry into the parties' intent is limited to the four corners of the agreement, Boos v. Nat. Fed'n of State High Sch. Ass'ns, 20 Kan. App. 2d 517, 524, 889 P.2d 797, 803 (1995); see also Cent. Kan. Credit Union, 886 F. Supp. at 1537 (court must enforce unambiguous settlement agreement by its expressed terms to give effect to parties' intentions). An unambiguous contract is one which does not contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. See Patrons Mut. Ins. Ass'n v. Harmon, 240 Kan. 707, 713, 732 P.2d 741, 746 (1987).

On March 12, 2019, the parties executed the Settlement Agreement by mutual release. The plain language of the Settlement Agreement states that plaintiff waived claims existing on March 12, 2019 against Dadson and Peter Lucas. In this case, plaintiff brings suit against defendants for repayment of his deferred salary as CEO and COB of Dadson, repayment of his personal loans to Dadson and "review anew" of the charges of conversion and breach of fiduciary duty that defendants brought against him. These claims arise out of events that occurred prior to March 12, 2019, and plaintiff therefore waived them by executing the Settlement Agreement. Because the unambiguous language of the Settlement Agreement states that plaintiff released his claims against defendants, the Court finds that if enforceable, the Settlement Agreement bars plaintiff's claims.

## II.     Enforceability Of The Settlement Agreement

Plaintiff claims that the settlement agreement is void because the state court improperly awarded Pamela Lucas attorney's fees. Defendants argue that because plaintiff has made this argument in prior litigation, the doctrine of collateral estoppel bars the relitigation of this issue.

Issue preclusion, or collateral estoppel, "prevents a court from reconsidering an issue previously decided in a prior action if (1) the issue previously decided is identical with the one

presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." B-S Steel v. Texas Indus., Inc., 439 F.3d 653, 662 (10th Cir. 2006). To establish privity, defendants must show that "the parties in the two actions are really and substantially in interest the same." Cain v. Jacox, 302 Kan. 431, 437, 354 P.3d 1196, 1201 (2015) (quoting Lowell Staats Min. Co., Inc. v. Philadelphia Elec. Co., 878 F.2d 1271, 1275 (10th Cir. 1989)).

A full and fair opportunity to litigate an issue focuses "on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." Stan Lee Media, Inc. v. Walt Disney Co., 774 F.3d 1292, 1297 (10th Cir. 2014) (citations omitted). The Tenth Circuit has emphasized that "a party cannot now complain that it did not have a full and fair opportunity to litigate the issue when it asked the prior court to decide the issue in its brief, and it argued its position extensively in the prior proceeding." Id. (citations omitted).

In his appeal of the divorce decree, plaintiff argued that categorizing Pamela Lucas' attorney fees from the Johnson County Proceeding as a dissipation of assets violated the Settlement Agreement. Plaintiff puts forth the same argument here. The first element of collateral estoppel is met because plaintiff is presenting an issue that is identical to the issue previously decided in the Johnson County Proceeding. The Kansas Court of Appeals decision affirmed that the decree was a final judgment, and the Kansas Supreme Court denied review. The second element of collateral estoppel is therefore met because the Johnson County Proceeding was a final adjudication on the merits. Finally, defendants were in privity with Pamela Lucas as they were all parties to the

Settlement Agreement. The third element of collateral estoppel is therefore met.

As to the fourth element of collateral estoppel, plaintiff argues that he did not have a full and fair opportunity to litigate this issue because defendants have never responded to his arguments that Pamela Lucas breached the Settlement Agreement during the division of martial assets. Plaintiff's Response To The Court's Order To Show Cause Concerning Defendants' Argument For Application Of Collateral Estoppel, And Plaintiff's Refutation Thereof (Doc. #45) filed February 9, 2023 at 2. Plaintiff asked the state court of appeals, however, to decide this issue in 2019. Plaintiff put forth eight arguments in his brief on appeal, and the court rejected them. Plaintiff had the incentive and opportunity to litigate this issue in state court, *and he did*. Plaintiff "cannot now complain that [he] did not have a full and fair opportunity to litigate the issue when [he] asked the prior court to decide the issue in [his] brief, and [he] argued its position extensively." Stan Lee Media, 774 F.3d at 1297 (citations omitted). The Court finds that plaintiff had a full and fair opportunity to litigate this issue in the divorce proceeding, and the state court, nevertheless, concluded that plaintiff had not offered any legal arguments that established a violation of the Settlement Agreement. Matter of Marriage of Lucas, No. 122204, 2021 WL 1045186, at *8 (Kan. Ct. App. March 19, 2021), review denied (Mar. 18, 2022). Collateral estoppel applies, and plaintiff cannot relitigate this issue here.

The Court holds that pursuant to the Settlement Agreement, plaintiff released his claims against defendants. Under the doctrine of collateral estoppel, the Court will not reconsider plaintiff's argument regarding the enforceability of the Settlement Agreement. The Court therefore sustains defendants' motion for summary judgment on plaintiff's claims.

**IT IS THEREFORE ORDERED** that Defendants' Motion For Summary Judgment (Doc. #31) filed November 1, 2022 is **SUSTAINED.** Plaintiff has no remaining claims in this

action.

Dated this 15th day of February, 2023 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
