## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JAMES R. LUCAS,                           )
                                          )
                    Plaintiff,            )
                                          )          CIVIL ACTION
v.                                        )
                                          )          No. 22-2107-KHV
DADSON MANUFACTURING CORP.                )
and PETER B. LUCAS,                       )
                                          )
                    Defendants.           )
_____   )

## MEMORANDUM AND ORDER

On February 28, 2025, the Court conducted an evidentiary hearing on its Order To Show Cause (Doc. #81) filed February 7, 2025. On the record, the Court found by clear and convincing evidence that plaintiff had violated the Court's Order (Doc. #61) filed June 9, 2023, and it held him in contempt. The Court sanctioned plaintiff in the amount of $38,494.41, plus defendants' attorney's fees and costs associated with the evidentiary hearing. The Court took under advisement defendants' remaining sanction requests. The Court also held that defendants had not engaged in sanctionable conduct and therefore denied plaintiff's request for sanctions against them.

This matter comes before the Court on Plaintiff's Motion Regarding The Hearing (Doc. #88) filed March 3, 2025 and Defendants' Memorandum In Support Of Plaintiff['s] Incarceration For Contempt (Doc. #90) filed March 10, 2025. For reasons set forth below, the Court overrules plaintiff's motion and sanctions him in the total amount of $43,774.41. The Court overrules defendants' remaining requests.

## Legal Standards

The Court has broad discretion to use its contempt powers to ensure adherence to its orders. See Rodriguez v. IBP, Inc., 243 F.3d 1221, 1231 (10th Cir. 2001). Contempt proceedings can be

civil or criminal.  <u>Yates v. United States</u>, 355 U.S. 66, 74 (1957).  Civil contempt sanctions compel compliance with a court order or compensate litigants for injuries sustained from the contemnor's disobedience.  <u>Ager v. Janice C. Stormont Hosp. & Training Sch. for Nurses</u>, 622 F.2d 496, 500 (10th Cir. 1980).  By contrast, criminal contempt sanctions are punitive in nature and vindicate the authority of the Court.  <u>Gompers v. Bucks Stove & Range Co.</u>, 221 U.S. 418, 441 (1911).

## I.    Civil Contempt

In civil contempt proceedings, the moving party has the initial burden of proving by clear and convincing evidence that (1) a valid court order existed, (2) the non-moving party had knowledge of the order and (3) that party disobeyed the Court's order.  <u>United States v. Ford</u>, 514 F.3d 1047, 1051 (10th Cir. 2008).  If the moving party makes such a showing, the burden shifts to the non-moving party to show either that he complied with the order or that he could not do so. <u>Id.</u>  Willfulness is not an element of civil contempt but may assist the Court in determining an appropriate sanction.  <u>Taggart v. Lorenzen</u>, 587 U.S. 554, 561–62 (2019).

Once the Court finds the non-moving party in civil contempt, it may impose a variety of civil contempt sanctions, including ordering the contemnor to pay attorney's fees, <u>see</u> <u>Universal Motor Oils Co. v. Amoco Oil Co.</u>, 743 F. Supp. 1484, 1487 (D. Kan. 1990), and related fees and expenses which the moving party incurred during the litigation, <u>see</u> <u>Premium Nutritional Prods., Inc. v. Ducote</u>, 571 F. Supp. 2d 1216, 1220 (D. Kan. 2008).  Where a fine is compensatory, the amount must be based on the moving party's actual loss sustained as a result of the contemptuous conduct.  <u>O'Connor v. Midwest Pipe Fabrications, Inc.</u>, 972 F.2d 1204, 1211 (10th Cir. 1992).  In exercising its discretion, the Court may incarcerate non-compliant parties if doing so would serve the purpose of coercing compliance.  <u>Ager</u>, 622 F.2d at 500.

## II.    Criminal Contempt

In criminal contempt proceedings, the sanction—generally, a term of imprisonment or a fine—is punitive and imposed retroactively for a completed act of disobedience, meaning that the contemnor cannot avoid or abbreviate the sanction through compliance.  Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 828–29 (1994).  Criminal contempt is a crime in the ordinary sense of the word.  Bloom v. Illinois, 391 U.S. 194, 201 (1968).  Accordingly, a party subject to criminal contempt is entitled to the full range of constitutional protections applicable in other criminal proceedings.  Bagwell, 512 U.S. at 826.  In criminal contempt proceedings, the movant must prove willful disobedience beyond a reasonable doubt.  Universal Motor Oils Co., 743 F. Supp. at 1487.

### Factual And Procedural Background

The factual background underlying the parties' dispute is set forth in detail in the Court's Memorandum And Order (Doc. #46) filed February 15, 2023.

Highly summarized, from 2006 to 2017, plaintiff served as Chief Executive Officer, President and Chairman of the Board of Dadson Manufacturing Corporation.  Dadson was a family business owned by the Nancy F. Peterson Trust.[1]  Pamela K. Lucas—daughter of Nancy F. Peterson and plaintiff's former wife—was a member of Dadson's Board of Directors and trustee of the Nancy F. Peterson Trust.  In 2017, Dadson terminated plaintiff's employment and promoted the son of plaintiff and Pamela, Peter Lucas, to President.  While serving as CEO and Chairman of the Board, plaintiff took deferred salary for approximately three years and eight months.  During that time, he also made loans to Dadson from his personal account.

---

[1]    The Missouri Secretary of State administratively dissolved the corporation in June of 2022.

In December of 2018, to recover his deferred salary and loans, plaintiff sued Dadson, Nancy Peterson, the Nancy F. Peterson Trust and Pamela Lucas in the District Court of Johnson County, Kansas, Case No. 17-CV-00853. The case proceeded to trial, and the jury awarded plaintiff $278,066.05 in deferred salary. It awarded Dadson $117,328.64 for conversion of overpaid loans and $400,000 for plaintiff's breach of fiduciary duty. The jury also determined that Dadson was entitled to punitive damages. The parties entered into a settlement agreement, however, in which Dadson relinquished its right to punitive damages and plaintiff waived his claims against Dadson, Pamela Lucas and Peter Lucas. Since then, as of February 28, 2025, plaintiff has brought 96 unsuccessful claims against parties, counsel and other entities involved in that suit, all relating to his deferred salary and personal loans.

On March 18, 2022, plaintiff filed this suit against Dadson and Peter Lucas, again seeking repayment of his deferred salary and personal loans. On February 15, 2023, the Court granted defendants' motion for summary judgment, holding that the settlement agreement barred plaintiff's claims. That same day, the Court entered judgment in favor of defendants.[2]

On March 22, 2023, defendants moved for sanctions. On June 5, 2023, the Court held an evidentiary hearing. On the record, defendants agreed to withdraw their motion for sanctions and in return, plaintiff agreed not to file any new lawsuits against Dadson and related parties. On June 9, 2023, the Court issued its written order, memorializing the parties' agreement on the record. See Order (Doc. #61). By agreement of the parties, the Court ordered that plaintiff "shall not file any new action against Dadson, Nancy Peterson, the Nancy Peterson Trust, Peter Lucas, Pam Lucas or Mark Bodine that in any way relates to the Johnson County lawsuit, No. 17-CV-00853." Order (Doc. #61) at 1. The Court overruled as moot the motion for sanctions, given the

---

[2]    On March 8, 2023, the Court amended the judgment to correct a clerical error.

parties' agreement, but retained jurisdiction over the case. The Court cautioned plaintiff that if he violated the letter or the spirit of the order, it would readdress the issue of sanctions. Despite having agreed to the order, plaintiff appealed. On April 15, 2024, the Tenth Circuit affirmed.

On November 5, 2024, plaintiff filed a new lawsuit against Dadson, Peter Lucas and Thomas Reppell (an alleged Dadson director) in the Circuit Court of Jackson County, Missouri. See Petition For Payment Of Settlement Offer Made To The Defendants While They Were Operating Illegally, Making A Settlement For Repayment Of Personal Loans, And Sanctions For Their Illegal Operations (Doc. #75-4) filed January 24, 2025. In that suit, plaintiff requested that defendants pay him $167,506.61 for the personal loans that he made to Dadson during his employment. Id. at 15.

On January 24, 2025, defendants filed a motion for an order to show cause why the Court should not hold plaintiff in civil contempt and sanction him for violating its order that he not commence further litigation on these matters. See Defendants' Motion For An Order To Show Cause (Doc. #74). Defendants requested that the Court award the attorney's fees and costs of defending this action and plaintiff's Jackson County lawsuit. Id. Defendants also incorporated by reference the sanctions requested in their motion for sanctions in March of 2023: injunctive relief barring plaintiff from prosecuting new actions without leave of court and denying plaintiff the right to proceed in forma pauperis with any appeal. Id. (incorporating sanctions requested in Defendants' Motion [For] Sanctions To Be Assessed As Costs (Doc. #53) filed March 22, 2023).

One day later, on January 25, 2025, plaintiff filed his own motion for an order to show cause why the Court should not hold *defendants* in contempt for misleading the Court about Dadson's status as a Missouri corporation. See Plaintiff's Motion For Order To Show Cause (Doc.

#76).  The Court sustained both motions for orders to show cause.  See Order To Show Cause (Doc. #81).

On February 28, 2025, the Court held an evidentiary hearing.  The Court found by clear and convincing evidence that (1) a valid court order existed, see Order (Doc. #61), (2) plaintiff had knowledge of the order and agreed to it on the record at the evidentiary hearing on June 5, 2023 and (3) by filing his Jackson County lawsuit, plaintiff violated the Court's order.  The Court held plaintiff in civil contempt.  Turning to sanctions, the Court awarded defendants $38,494.41, plus their attorney fees and costs associated with the evidentiary hearing.[3]  On the record, defendants orally requested that the Court incarcerate plaintiff for 24 hours as a sanction for his contempt.  Because defendants had not made this request in their motion, the Court informed them that if they chose to seek incarceration, they had to file a motion to that effect.  The Court took under advisement defendants' remaining sanction requests.  As for plaintiff's motion, the Court ruled that defendants had not engaged in sanctionable conduct.

Following the hearing, on March 3, 2025, the Court entered an order allowing defendants to file a memorandum on the appropriate amount and/or type of sanctions which the Court should impose against plaintiff.  See Order (Doc. #87).  That same day, plaintiff filed a motion regarding the hearing, requesting that the Court not sanction him for filing suit in Jackson County, Missouri.  See Plaintiff's Motion Regarding The Hearing (Doc. #88) filed March 3, 2025.  On March 10, 2025, defendants filed a brief in support of their oral request for incarceration.  See Defendants' Memorandum In Support Of Plaintiff's Incarceration For Contempt (Doc. #90).  On March 19, 2025, plaintiff responded, calling defendants' request "malicious, harassing, a request for injustice,

---

[3]    The sum of $38,494.41 reflects defendants' legal fees and expenses up to the evidentiary hearing on February 28, 2025 and their costs associated with filing an answer in the Jackson County case.

an attempt to destroy the Plaintiff, entirely disproportionate to anything the Plaintiff may have done, totally untimely, and contrary to precedent on criminal contempt." Plaintiff's Response To Defendants' Memorandum In Support Of Plaintiff's Incarceration For Contempt (Doc. #92) at 1.

## Analysis

The Court has already held plaintiff in civil contempt for his violation of the Court's Order (Doc. #61). Therefore, the only remaining issue is the amount and type of sanctions.

Plaintiff requests that the Court not impose sanctions because (1) he did not file the Jackson County suit with bad intent; (2) he apologized for the mistake of filing suit in another court; and (3) he rectified the situation by withdrawing that case. See Plaintiff's Motion Regarding The Hearing (Doc. #88). He again asserts that the Court should sanction *defendants* for deception and violations of Missouri corporate law. Plaintiff's motion and response to defendants' memorandum repeat arguments that the Court has already addressed on the record. Accordingly, for substantially the reasons stated on the record, the Court overrules plaintiff's motion not to impose sanctions.

The Court now turns to defendants' requested sanctions. As noted, the Court has inherent power to enforce compliance with its orders, which includes sanctioning plaintiff for conduct before another tribunal when that conduct is in direct defiance of its orders. Chambers v. NASCO, Inc., 501 U.S. 32, 57 (1991); see also Keyes L. Firm, LLC v. Napoli, 120 F.4th 139, 143–44 (4th Cir. 2024) (court could sanction defendant for filing two new state lawsuits in defiance of district court's authority). Defendants request that as a sanction for plaintiff's contempt, the Court:

1.    Award the cost of defending this action and plaintiff's Jackson County lawsuit;

2.    Enter an injunction barring plaintiff from prosecuting new actions in any jurisdiction without leave of court;

3.    Deny plaintiff the right to proceed in forma pauperis with any appeal; and

4.    Incarcerate plaintiff for his contempt.

The Court addresses each request in turn.

## I.    Compensatory Sanctions

Defendants request that as a civil contempt sanction, the Court impose against plaintiff the cost of defending this action and the cost of answering plaintiff's Jackson County lawsuit.

As noted, one purpose of civil contempt sanctions is to compensate defendants for injuries resulting from plaintiff's non-compliance.  Acosta v. Paragon Contractors Corp., 884 F.3d 1225, 1238 (10th Cir. 2018).  An award of compensatory sanctions must be based upon the "actual losses sustained as a result of the contumacy."  O'Connor, 972 F.2d at 1211.  When plaintiff acts in willful disobedience of a court order, the Court can also impose defendants' attorney's fees for the entire litigation.  Chambers, 501 U.S. at 45.  Willfulness is defined as "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful."  United States v. Themy-Kotronakis, 140 F.3d 858, 864 (10th Cir. 1998) (defining in criminal contempt context).

At the evidentiary hearing on February 28, 2025, defendants presented evidence that to date, they had incurred $38,494.41 in attorney's fees and litigation costs, both associated with this case and answering plaintiff's Jackson County case.   Based on this evidence and plaintiff's testimony, the Court sanctioned plaintiff in the amount of $38,494.41.  The Court directed defendants to file an updated request for attorney's fees and costs incurred from the hearing. Accordingly, in its Memorandum In Support Of Plaintiff's Incarceration For Contempt (Doc. #90), defendants claim additional attorney's fees of $5,280, supported by billing records.  Plaintiff does not challenge the amount or reasonableness of the requested fees.  The Court therefore sanctions plaintiff in the total amount of $43,774.41 for his violation of the Court's order.[4]

---

[4]    In response to defendants' memorandum, plaintiff informs the Court that he would
(continued. . .)

## II.    Injunctive Relief

On March 22, 2023, in their original motion for sanctions, defendants requested that the Court enter an injunction barring plaintiff from prosecuting new actions in any jurisdiction without leave of court.  Defendants renewed this request in their motion for an order to show cause.  This request is moot, however, because the Court has already granted that relief.  See Order (Doc. #61).

On June 5, 2023, defendants agreed to withdraw their motion for sanctions and in return, plaintiff agreed not to file any new lawsuits against Dadson and related parties.  On June 9, 2023, the Court issued its written order, memorializing the parties' verbal agreement on the record.  See Order (Doc. #61).  Plaintiff appealed.  On appeal, plaintiff argued that at the evidentiary hearing on June 5, 2023, the Court mocked and insulted him and deliberately gave defendants more time to present their evidence.  The Tenth Circuit rejected both arguments.  Moreover, it emphasized that (1) plaintiff consented to the entry of the order; (2) he provided no reason why he should not be held to the terms which he accepted; and (3) he did not argue that the order did not accurately memorialize the terms reached in open court.  For these reasons, the Tenth Circuit affirmed.

The Tenth Circuit recognized that the Court's order is a consent decree.  See Order And Judgment (Doc. #73) filed May 28, 2024 at 7 ("The June 9, 2023, order is a consent decree . . . [which] is final and appealable under § 1291") (internal citations omitted).  A consent decree is a negotiated agreement entered as an order of the Court which "the parties desire and expect will be reflected in, and be enforceable as, a judicial decree."  Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 378 (1992).  As "a final judgment, order, or proceeding," a consent decree is subject to

---

[4] (. . .continued)
agree to pay three sanctions against him, imposed by other courts, and half of defendants' updated attorney's fees claim ($5,280).  Plaintiff offers no principled basis for his request, and defendants have shown no apparent interest in accepting this offer.

Federal Rule of Civil Procedure 60(b).  Satsky v. Paramount Commc'ns, Inc., 7 F.3d 1464 (10th Cir. 1993) (quoting Fed. R. Civ. P. 60(b) (relief from final judgment or order)); see also Jackson v. Los Lunas Cmty. Program, 880 F.3d 1176, 1201 (10th Cir. 2018) (consent decree modifiable under Rule 60(b) motion).

As noted, the relief which defendants requested in their motion for sanctions in March of 2023 is effectively identical to the relief which the parties' agreement provided and which the Court granted.  Given the agreed order, defendants' request is moot.  Indeed, in renewing their request for injunctive relief, defendants have not requested any modification to the order pursuant to Rule 60(b), and the Court finds no reason to modify it.  An additional order to this effect would be duplicative and serve no new purpose in tempering plaintiff's conduct.  The Court therefore overrules defendant's renewed request for injunctive relief.  The injunction against further litigation remains in effect.  Should plaintiff violate the order again, the Court will seriously consider incarceration as a criminal sanction.

### III.    In Forma Pauperis Status

In their original motion for sanctions, defendants requested that if plaintiff appeals this matter, the Court deny any request to proceed in forma pauperis on appeal.

Under 28 U.S.C. § 1915(a), plaintiff may commence an action in forma pauperis—that is, without prepayment of fees—if he submits an affidavit that he is unable to pay such fees or give security.  28 U.S.C. § 1915(a).  If the Court has already permitted a party to proceed in forma pauperis during the district court proceedings, that party may proceed on appeal in forma pauperis without further authorization, unless the district court certifies that he is not appealing in good faith. Fed. R. App. P. 24(a)(3).

On April 14, 2022, Magistrate Judge Angel D. Mitchell granted plaintiff's motion to proceed in forma pauperis.  See Order (Doc. #13).  When plaintiff appealed this case to the Tenth Circuit on July 5, 2023, he proceeded in forma pauperis.  At this stage, any request relating to a future appeal is premature and speculative.  Accordingly, the Court overrules defendants' request without prejudice.  SRA Ins. Agency, LLC v. Virtus LLC, No. 21-2181-DDC, 2021 WL 1840065, at *8 (D. Kan. May 7, 2021) (overruling sanctions request as premature).

## IV.   Incarceration

Defendants request that the Court order incarceration given plaintiff's (1) contempt for judicial orders, (2) failure to pay the sanctions and judgment in Johnson County Case No. 17-CV-00853 and (3) never-ending quest to avoid the jury verdict in that case.[5]

Incarceration can be a sanction for both civil and criminal contempt, depending on the character and purpose of the sanction and the substance of the proceeding.  Hicks on Behalf of Feiock v. Feiock, 485 U.S. 624, 631–32 (1988).  As previously stated, the purpose of civil contempt sanctions is to compel obedience of the Court's order or to compensate defendants for injuries sustained from the disobedience.  Ager, 622 F.2d at 500.  By contrast, criminal contempt sanctions are punitive in nature and vindicate the authority of the Court.  Gompers, 221 U.S. at 441.  When the sanction is a sentence of imprisonment, it is remedial if plaintiff "stands committed unless and until he performs the affirmative act required by the court's order."  Id. at 442.  It is punitive if "the sentence is limited to imprisonment for a definite period."  Id.

---

[5]     Defendants also cite plaintiff's lack of respect for witnesses.  Defendants claim that after the hearing on February 28, 2025, plaintiff confronted Pamela Lucas and accused her of lying on the witness stand.  Defendants further claim that plaintiff would not yield and after defense counsel threatened to get the Court involved, plaintiff's assistant pulled him away.  Plaintiff denies that these events occurred in a hostile manner.  Plaintiff's misconduct, if any, is not relevant to the contempt for which the Court is imposing sanctions.  Also, the State of Kansas has ample authority to penalize assault and battery, if they occurred.

At this time, plaintiff has already dismissed his Jackson County lawsuit and incarceration would serve no remedial or coercive purpose.  For this reason, the Court overrules defendant's request to incarcerate plaintiff as a sanction for civil contempt.  Nevertheless, defendants also request that the Court impose incarceration as a criminal sanction.

"While willful and deliberate defiance of a court order is a serious matter, and the objectives of vindicating the Court's authority and deterring like conduct are important, criminal contempt proceedings are time-consuming and expensive."  United States v. McVeigh, 896 F. Supp. 1549, 1555 (W.D. Okla. 1995).  Because criminal contempt is itself a crime, plaintiff would be entitled to all constitutional protections afforded to criminal defendants—plaintiff must "be presumed innocent, proved guilty beyond a reasonable doubt, and accorded the right to refuse to testify against themselves."  Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 798 (1987).  In addition, plaintiff would have the right to the assistance of counsel, and the Court would need to appoint a government attorney to prosecute the action.  McVeigh, 896 F. Supp. at 1556; Fed. R. Crim. P. 42(a)(2).  Accordingly, criminal contempt proceedings involve a substantial investment by the Court and the government.  McVeigh, 896 F. Supp. at 1556.

The Court understands defendants' frustration with plaintiff's conduct over the last seven years and the time and energy that they have spent defending the 96 claims.  Even so, the Court must consider the efficacy of such a sanction and the costs of proceeding in that manner at this time.  Plaintiff has already withdrawn his Jackson County lawsuit.  In addition, the Court is already imposing a monetary sanction in the amount of $43,774.41.  The value of initiating criminal contempt proceedings is negligible, given the cost and time of doing so.  Therefore, at this time, the Court overrules defendants' request to initiate criminal contempt proceedings to incarcerate plaintiff.

**IT IS THEREFORE ORDERED** that <u>Plaintiff's Motion Regarding The Hearing</u> (Doc. #88) filed March 3, 2025 is **OVERRULED.**

**IT IS FURTHER ORDERED that the Court sanctions plaintiff in the amount of $43,774.41 for defendants' attorney's fees and litigation costs in defending this action and plaintiff's Jackson County, Missouri action.  The Court directs the Clerk to enter judgment in favor of defendants in the amount of $43,774.41.**

**IT IS FURTHER ORDERED that the Court shall retain jurisdiction over the case to enforce the injunction against further litigation, <u>see</u> <u>Order</u> (Doc. #61), and the sanctions set forth in this order.**

Dated this 2nd day of April, 2025 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge